# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| MARTIN J. WALSH, Secretary of Labor, § <br> United States Department of Labor, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> KELLY SILLS, COASTAL BRIDGE COMPANY, § <br> LLC, and COASTAL BRIDGE COMPANY, § <br> LLC, PLAN, § <br> § <br> Defendants. § | Civil Action No. 23-41 |

## COMPLAINT

COMES NOW Plaintiff Martin J. Walsh, Secretary of Labor, United States Department of Labor, and brings this action against Defendants Kelly Sills, Coastal Bridge Company, LLC, and Coastal Bridge Company, LLC, Plan, pursuant to Sections 502(a)(2) and 502(a)(5), 29 U.S.C. §§ 1132(a)(2) and 1132(a)(5), of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), for appropriate equitable and remedial relief under ERISA Sections 409 and 502(a)(5), 29 U.S.C. §§ 1109 and 1132(a)(5); to enjoin violations of the provisions of Title I of ERISA; and to obtain other appropriate relief to redress violations and to enforce the provisions of Title I of ERISA.

## I. JURISDICTION

Jurisdiction of this action is conferred upon this Court by ERISA Section 502(e)(1), 29 U.S.C. § 1132(e)(1).

## II. VENUE

Venue of this action lies in the United States District Court for the Middle District of Louisiana, pursuant to ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2).

## III. THE PLAN

Defendant Coastal Bridge Company, LLC, Plan (the "Plan") is, and at all times hereinafter mentioned was, an employee welfare benefit plan within the meaning of ERISA

Section 3(3), 29 U.S.C. § 1002(3). The Plan was established by and, at all times hereinafter mentioned, was maintained by Coastal Bridge Company, LLC, an employer engaged in commerce or in an industry or activity affecting commerce and is subject to the provisions of Title I, including Title I, Part 4 of ERISA, pursuant to ERISA Sections 4(a)(1) and 401(a), 29 U.S.C. §§ 1003(a)(1) and 1101(a). At all times relevant to this action, the Plan was administered in Baton Rouge, Louisiana, within the jurisdiction of this Court.

## IV. **THE DEFENDANTS**

1.     Defendant Coastal Bridge Company, LLC, (the "Company") was, at all times relevant to this action, a limited liability company in Louisiana engaged in transportation-related construction projects. It had a place of business at 4825 Jamestown Avenue, Baton Rouge, Louisiana, within the jurisdiction of this Court. At all times hereinafter mentioned, the Company has been an employer and a Plan Sponsor with respect to the Plan within the meaning of ERISA Sections 3(5) and 3(16)(B), 29 U.S.C. §§ 1002(5) and 1002(16)(B). At all times hereinafter mentioned, the Company had or exercised discretionary authority, control, and responsibility over Plan management and administration and exercised actual control over Plan assets. Thus, the Company has been a fiduciary with respect to the Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A). In addition, at all times hereinafter mentioned, the Company was a party in interest to the Plan within the meaning of ERISA Section 3(14), 29 U.S.C. § 1002(14).

2.     Defendant Kelly Sills ("Sills") was, at all times relevant to this action, the president and owner of the Company and acted on its behalf with respect to the Plan in Baton Rouge, Louisiana, within the jurisdiction of this Court. At all times hereinafter mentioned, Sills had and exercised discretionary authority, control, and responsibility over Plan management and

administration and exercised actual control over Plan assets. Thus, Sills was a fiduciary and a party in interest with respect to the Plan within the meaning of ERISA Sections 3(14) and 3(21)(A), 29 U.S.C. §§ 1002(14) and 1002(21)(A).

3. Defendant Coastal Bridge Company, LLC, Plan, as described in paragraph III above, is named as a defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to assure that complete relief can be granted.

## V. FACTUAL ALLEGATIONS

**A.  Sills and the Company Failed To Forward Employee Contributions To The Plan.**

1. Sections I through IV above are re-alleged and incorporated by reference herein.

2. The Plan is a group benefit plan that included health, life, dental, vision, short-term disability, long-term disability, accidental death and dismemberment, cancer, accident, and critical illness insurance coverages for employees of the Company. Full-time employees who worked at least 30 hours per week were eligible to enroll for insurance benefits on the first of the month following or coinciding with 60 days of employment.

3. The Company offered fully insured dental and vision coverage through Ameritas. The Company offered fully insured cancer, accident, and critical illness insurance through Guardian.

4. The Company offered self-insured health insurance through Blue Cross Blue Shield Louisiana. The Company and Blue Cross Blue Shield Louisiana entered into an Administrative Service Agreement, which was effective April 1, 2019. Under the Administrative Services Agreement, the Company, as the plan sponsor, was required to fund the group health plan and to pay monthly administrative fees and claims reimbursement to Blue Cross Blue Shield Louisiana. Blue Cross Blue Shield Louisiana was responsible for claims

processing and payment, contingent upon the Company, as the plan sponsor, fulfilling all of its obligations under the Administrative Services Agreement.

5. Employees paid their portions of their insurance coverages through payroll withholdings.

6. The Company served as the Plan Administrator and was responsible for collecting and forwarding employee contributions withheld from participants' paychecks to Ameritas, Guardian, and Blue Cross Blue Shield Louisiana and for satisfying the notice, disclosure, and other obligations placed on plan administrators by ERISA.

7. At all relevant times, Sills was an authorized signatory to the Company's bank account with the authority to transfer funds to and from this account. Upon information and belief, among other duties, Sills directed the finances of the Company, including the disposition of Plan assets held by the Company, and was a signatory on checks sent on the Company's behalf to pay the Plan's insurance premiums for the fully funded policies through Guardian and Ameritas and the administrative fees and claims reimbursement for the self-funded health insurance though Blue Cross Blue Shield Louisiana.

8. The Ameritas dental and vision insurance was terminated effective August 31, 2019. From at least September 1, 2019, through December 27, 2019, the Company and Sills withheld employee contributions for dental and vision insurance but did not forward $7,131.16 in withheld dental insurance premiums and $2,749.80 in withheld vision insurance premiums to Ameritas.

9. Guardian did not receive premium payments for November 2019 or December 2019. Due to the non-payment of premiums, Guardian terminated the cancer, accident, and critical illness insurance coverage, effective November 3, 2019, due to nonpayment of premiums. From at least November 1, 2019, through December 27, 2019, the Company and Sills withheld employee

4

contributions for cancer, accident, and critical illness insurance premiums from employee paychecks but did not forward the premiums to Guardian. Sills and the Company failed to pay Guardian $2,772.18 in withheld cancer insurance premiums, $2,902.56 in withheld accident insurance premiums, and $2,271.03 in withheld critical illness insurance premiums.

10. The Company's Administrative Services Agreement with Blue Cross Blue Shield Louisiana provided that Blue Cross Blue Shield Louisiana would bill the Company each month for administrative fees and claims reimbursement and failure of the Company to remit payment for these expenses could result in suspension of Blue Cross Blue Shield Louisiana's administrative services. The Administrative Services Agreement further provided that Blue Cross Blue Shield Louisiana would not pay any claims or administer any runout claims once the Administrative Services Agreement was terminated.

11. From at least December 1, 2019, through December 27, 2019, the Company withheld $20,138.70 in employee contributions for medical insurance from employee paychecks but did not pay invoices from Blue Cross Blue Shield Louisiana.

12. Additionally, prior to December 1, 2019, the Company and Sills frequently failed to pay Blue Cross Blue Shield Louisiana invoices on time, resulting in retroactive termination of coverage, temporary gaps in coverage, suspensions of claims processing, and pay holds on claims. The changes in status of the health insurance coverage and claims processing resulted in some participants' claims remaining unprocessed and unpaid.

13. BSX Insurance served as the insurance broker for the Company and Sills. On January 6, 2020, Sills sent a letter to BSX Insurance, stating that the Company was terminating the group benefit coverage provided by Blue Cross Blue Shield Louisiana, Ameritas, and Guardian insurance, effective midnight December 27, 2019. However, as addressed in Paragraphs 8 and 9 above, Ameritas terminated

vision and dental coverage effective August 31, 2019, and Guardian terminated cancer, accident, and critical illness coverage, effective November 3, 2019.

14. The Company was informed by BSX Insurance on January 8, 2020, that the Company owed Blue Cross Blue Shield Louisiana for claims and prescription drug billing and for administration fees. The BSX Insurance representative provided a runout services agreement for the Company to sign to address runout claims. Sills and the Company did not enter into the runout services agreement, and in accordance with the Administrative Services Agreement, Blue Cross Blue Shield Louisiana did not administer any runout claims once the Administrative Services Agreement was terminated.

15. On February 28, 2020, a Blue Cross Blue Shield Louisiana attorney sent Sills a letter, informing him that Blue Cross Blue Shield Louisiana sought $78,119.85 for medical and prescription drug claims that accrued before the plan terminated effective December 27, 2019, and that Blue Cross Blue Shield Louisiana had suspended the payment of all claims effective December 20, 2019, due to nonpayment. The letter further informed Sills that there was an outstanding balance due to Blue Cross Blue Shield Louisiana for administrative services fees in the amount of $12,355.23 and that Blue Cross Blue Shield Louisiana had suspended all administrative services because of the delinquency in payment. The letter also advised Sills that the Company had not signed a runout agreement with Blue Cross Blue Shield Louisiana; therefore, Blue Cross Blue Shield Louisiana would not service any claims that were received after December 27, 2019.

16. On May 4, 2020, the Company issued a check to Blue Cross Blue Shield Louisiana for $78,119.85. This payment covered the amount billed for medical and prescription drug claims that accrued before the plan was terminated effective December 27, 2019, but it did not cover claims that remained unpaid due to the suspension of the Administrative Services Agreement for nonpayment or denied claims that Blue Cross Blue Shield Louisiana received during lapses in

coverage that were not reprocessed. This amount also did not include runout claims, which were claims in which a Plan participant received service before December 27, 2019, but Blue Cross Blue Shield Louisiana did not receive the claim before the Plan terminated. The Company was responsible for all claims not paid during the suspension of the Administrative Services Agreement, claims not reprocessed after reinstatement of insurance coverage, and all runout claims.

17. Upon information and belief, at least 81 Plan participants had health insurance claims denied, resulting in unpaid medical expenses, due to Sills' and the Company's late payment and non-payment of Blue Cross Blue Shield Louisiana invoices and failure to remit employee pay withholdings to Blue Cross Blue Shield Louisiana.

18. Two of the Plan participants with unpaid medical claims, Joe Sauls and Luis Nieves-Rivera, have filed a lawsuit in this Court against Sills, the Company, and additional defendants, alleging breach of contract and ERISA violations. *See Sauls v. Coastal Bridge Co., LLC.,* No. 3:21-cv-00302 (M.D. La. filed May 24, 2021). The Secretary of Labor is not seeking relief for Sauls and Nieves-Rivera for unpaid medical claims or unremitted employee contributions for health insurance in this Complaint because these participants are seeking that relief in their lawsuit. Upon information and belief, the amount of uncovered and unpaid medical claims owed to the other participants, not including Sauls and Nieves-Rivera, is at least $172,391.35.

19. From at least September 1, 2019, through December 27, 2019, Sills and the Company engaged in a practice where they withheld employee contributions for health, dental, vision, cancer, accident, and critical illness insurance totaling not less than $37,965.43 from Plan participants' paychecks but failed to forward these amounts to the Plan.

20. Instead of remitting these withheld employee contributions to the Plan, upon information and belief, Sills and the Company retained and commingled these Plan assets within

the Company's general banking account(s) so these amounts could be used for non-Plan purposes.

21. As a result of Sills' and the Company's failure to remit employee contributions, the Plan failed to pay premiums owed to Ameritas and Guardian and failed to pay medical claims and administrative fees owed to Blue Cross Blue Shield Louisiana.

**B.   Sills And The Company Failed To Warn Participants That Their Insurance Was Cancelled or Subject To Cancellation Because of Failure To Make Payments.**

1. All prior Sections and Paragraphs stated above are re-alleged and incorporated by reference herein.

2. From at least December 1, 2019, through December 27, 2019, the Company withheld employee contributions for medical insurance from employee paychecks but did not pay invoices from Blue Cross Blue Shield Louisiana. Additionally, prior to December 1, 2019, the Company and Sills frequently failed to pay Blue Cross Blue Shield Louisiana invoices on time, resulting in retroactive termination of coverage, temporary gaps in coverage, suspensions of claims processing, and pay holds on claims. The changes in status of the health insurance coverage and claims processing resulted in some participants' claims remaining unprocessed and unpaid.

3. Because Sills and the Company failed to instruct or warn participants that their health care insurance was terminated or at risk of being terminated retroactively and that claims processing could be suspended, participants continued to seek medical services as usual based on their reasonable belief that services would be covered. As a result, upon information and belief, claims that would have been eligible for coverage were not processed or paid.

4. Because Sills and the Company continued to withhold employee contributions from participants' pay through December 27, 2019, participants and beneficiaries reasonably believed their medical claims would be processed and paid.

8

5. As a result of Sills' and the Company's failure to warn participants during the period of at least June 1, 2019, through at least December 27, 2019, that amounts owed to Blue Cross Blue Shield Louisiana were unpaid and that the owed amounts might continue to go unpaid resulting in termination of insurance, claims pay holds, and unprocessed claims, participants and beneficiaries reasonably believed that medical claims continued to be covered by the Blue Cross Blue Shield Louisiana insurance during this period.

6. As a result of Sills' and the Company's failure to notify all participants and beneficiaries that amounts owed to Blue Cross Blue Shield Louisiana were unpaid, participants and beneficiaries continued to seek benefits under the Plan in the belief that coverage and claims processing remained active. Upon information and belief, participants and beneficiaries, therefore, did not seek other health insurance coverage.

## VI. **VIOLATIONS**

A. By the conduct described in Section V(A), Paragraphs 1 to 21, above, Defendants Sills and the Company, acting in their fiduciary capacities with respect to the Plan, violated ERISA by failing to forward employee contributions in that they:

1. Caused the assets of the Plan to inure to the benefit of the Employer and Plan Sponsor and failed to hold Plan assets for the exclusive purposes of providing benefits to participants in the Plan and their beneficiaries in violation of Section 403(c)(1) of ERISA, 29 U.S.C. § 1103(c)(1);

2. Failed to discharge their duties with respect to the Plan solely in the interests of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries in violation of Section 404(a)(1)(A) of ERISA, 29 U.S.C. § 1104(a)(1)(A);

3. Failed to discharge their duties with respect to the Plan with the care, skill, prudence and diligence under the circumstances that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims in violation of Section 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(B);

4. Caused the Plan to engage in transactions that they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest of assets of the Plan in violation of Section 406(a)(1)(D) of ERISA, 29 U.S.C. § 1106(a)(1)(D);

5. Dealt with assets of the Plan in their own interests or for their own account in violation of Section 406(b)(1) of ERISA, 29 U.S.C. § 1106(b)(1); and

6. Engaged in transactions involving the Plan on behalf of a party whose interests were adverse to the interests of such Plan and the interests of its participants and beneficiaries in violation of Section 406(b)(2) of ERISA, 29 U.S.C. § 1106(b)(2).

B. By the conduct described in Section V(B), Paragraphs 1 to 6, above, Defendants Sills and the Company, acting in their fiduciary capacities with respect to the Plan, violated ERISA by failing to warn participants that their coverage under the Plan was subject to retroactive cancellation, claims pay holds, and unprocessed claims, due to a failure to pay or timely pay the required claims reimbursement and administrative fees and that they could not guarantee future payments would be made, in that they:

1. Failed to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries in violation of Section 404(a)(1)(A) of ERISA, 29 U.S.C. § 1104(a)(1)(A); and

2. Failed to discharge their duties with respect to the Plan with the care, skill,

prudence, and diligence under the circumstances that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims in violation of Section 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(B).

## VII. DIRECT LIABILITY

1. As a direct and proximate result of engaging in breaches of their fiduciary responsibilities, obligations, or duties and by engaging in transactions prohibited by ERISA, as described above, Defendants Sills and the Company have caused the Plan and participants to suffer financial losses for which they are each jointly and severally liable pursuant to ERISA Section 409(a), 29 U.S.C. § 1109(a).

2. As a direct and proximate result of engaging in breaches of their fiduciary responsibilities, obligations, or duties and by engaging in transactions prohibited by ERISA, as described above, Defendants Sills and the Company have caused the participants and beneficiaries to suffer harm in the form of uncovered medical claims for which they are each jointly and severally liable under a surcharge theory pursuant to ERISA Section 502(a)(5), 29 U.S.C. § 1109(a).

## VIII. CO-FIDUCIARY LIABILITY

Pursuant to the provisions of ERISA Section 405, 29 U.S.C. § 1105, Defendants Sills and the Company are personally liable for the breaches of fiduciary responsibility set forth in Sections V and VI above that are committed by any co-fiduciaries with respect to the Plan.

## IX. PRAYER

WHEREFORE, cause having been shown, Plaintiff prays that this Court:

1. Order Defendants to restore all losses to the Plan, or directly to the participants if it is infeasible to pay the Plan, with interest thereon, resulting from their breaches of fiduciary

obligations and to correct all prohibited transactions and, if necessary, to offset any claims which they may have against or with the Plan against the amount of losses, including lost opportunity costs, resulting from their violations;

2. Order that Defendants be removed as fiduciaries to the Plan;

3. Order Defendants to appoint an independent fiduciary to the Plan to be approved by Plaintiff and the Court for the limited purpose of ensuring that Plan assets recovered in this action are disbursed to Plan participants with quarterly progress reports to the Plaintiff, and once all funds have been disbursed, to terminate the Plan if it is not already terminated;

4. Order that any expenses associated with the appointment of an independent fiduciary and the subsequent administration and termination of the Plan be paid by Defendants;

5. Order that Defendants pay all uncovered medical claims incurred by Plan participants and beneficiaries as a result of the aforementioned fiduciary breaches;

6. Permanently enjoin Defendants from violating the provisions of ERISA;

7. Permanently enjoin Defendants from acting as a fiduciary to any employee benefit plan covered by ERISA;

8. Award Plaintiff costs of this action; and

9. Provide such other remedial relief as may be appropriate.

Respectfully Submitted,

| | |
|---|---|
| SEEMA NANDA<br>Solicitor of Labor | UNITED STATES OF AMERICA, by |
| | RONALD C. GATHE, JR. |
| JOHN RAINWATER<br>Regional Solicitor | UNITED STATES ATTORNEY |
| | /s/ Davis Rhorer Jr. |
| SHERYL L. VIEYRA<br>Counsel for ERISA | Davis Rhorer Jr., LBN 37519<br>Assistant United States Attorney<br>777 Florida Street, Suite 208 |
| AMY HAIRSTON<br>Senior Trial Attorney<br>Texas State Bar No. 24027954<br>Email: hairston.amy.s@dol.gov | Baton Rouge, Louisiana 70801<br>Telephone: (225) 389-0443<br>Fax: (225) 389-0685<br>E-mail: davis.rhorer@usdoj.gov |

U.S. Department of Labor
Office of the Solicitor
525 S. Griffin Street, Suite 501
Dallas, Texas 75202
Telephone: (202) 961-7864